OPINION OF THE COURT
Larry J. Rosen, J.
Plaintiff, a resident of the City of Albany, brings this small claim against defendant, Niagara Mohawk Power Corporation, seeking judgment for damages alleged to have been absorbed as a result of his loss of power following the infamous storm of October 3rd and October 4th of this year.
The plaintiff, plainly a delightful, credible and honest man, comes before this court with the following facts. His residential power was lost after the great October storm and he *1049 testified that he believed and relied upon Niagara Mohawk’s early prognostication that service would be restored to its customers within 48 hours. In fact, his electrical service was not restored until the early evening of Thursday, October 8, 1987. Plaintiff claims that Niagara Mohawk is responsible for his actual losses from Tuesday, October 6, 1987, until the aforementioned restoration. His damages include, inter alia, motel expense for two nights and food spoilage.
At the outset, the court is compelled to note that if damages could be awarded in such a situation, it would be hard pressed to find a more deserving beneficiary of such an award than this plaintiff, a retired gentleman who honestly believes he was detrimentally misled by the initial forecasts of restoration.
A court of law, however, must not be a court of sentiment, whether or not a small claim is involved. UCCA article 18, which governs "Small Claims”, requires that cases be decided according to the substantive law.
Niagara Mohawk, pursuant to its tariff filed with the Public Service Commission, can only, by law, be held responsible for gross negligence when a major outage is involved. (See, Krasner v New York State Elec. & Gas Corp., 90 AD2d 921; also see, Lee v Consolidated Edison Co., 98 Misc 2d 304.) The storm of October 3-4, 1987 was an unprecedented "Act of God”. Nature caused the outage, not any negligence on the part of the defendant. But, what of the restoration? Can any gross negligence be imputed to defendant regarding the restoration efforts? On the record before it, the court thinks not. It is true that Niagara Mohawk’s initial public estimate of restoration proved to be mistaken. But this estimate was made in good faith and without intent to deceive. The defendant was understandably responding to an unprecedented storm and the resulting clamor of a demanding public. Given the enormity of the damage, this court believes the initial estimate to have been reasonably close to the mark. The restoration efforts of Niagara Mohawk were, likewise, done in a professional manner. This court heard testimony from Brian Carroll, a regional superintendent, 16-year employee of defendant, in charge of the restoration effort in the Capital Region. When he first appeared at the "Storm Restoration Center” Sunday morning, October 4, 1987, a staggering problem awaited him. The incredible storm terminated service in 210,000 of the 275,000 customers in the Capital Region. Substations, transmission lines and primary feeder lines had to be restored also in *1050 unprecedented numbers. Scores of crews had to be called in from out of State and independent tree and line contractors had to be hired.
On this record, this court must applaud the tireless and Herculean efforts of scores of dedicated professionals employed by Niagara Mohawk. Their expertise and generalship allowed the public to have its power restored as quickly as humanly possible under the catastrophic circumstances.
The court must note that we live in a society and culture which often demands "instant gratification”. Absent a magic wand, these demands, at times, cannot be met. Aristotle listed patience as a major virtue and modern society should not disregard such timeless wisdom.
In the instant case, the claim must be dismissed as on this record the defendant, Niagara Mohawk Power Corporation, violated no legal obligation it owes its customers with regard to the restoration efforts after the historic October 4, 1987 storm.